ORIGINAL

FILED IN OPEN COURT
U.S.D.C. - Atlanta
SEP 15 2020
JAMES N. HATTEN, Clerk
By: [signature] Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

*v.*

JIMMIE ANTHONY "JIM" BEARD

Criminal Indictment

No. 1 20-CR-351

THE GRAND JURY CHARGES THAT:

**COUNTS 1 - 3**

*(Wire Fraud – 18 U.S.C. § 1343)*

1. Beginning on a date unknown, but from at least in or about August 2013 to in or about March 2018, in the Northern District of Georgia and elsewhere, defendant JIMMIE ANTHONY "JIM" BEARD, knowingly devised and intended to devise a scheme and artifice to defraud the City of Atlanta, and to obtain money and property from the City of Atlanta by means of a materially false and fraudulent pretense, representation, and promise, and by an omission of material fact, and in furtherance of the scheme caused to be transmitted by means of wire communications in interstate commerce, certain signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

**Background**

At all times relevant to this Indictment:

2. The City of Atlanta is and was the capital and most populous city in Georgia, with a population exceeding 450,000 people. A component of the City of Atlanta government was the Department of Finance, whose mission was "to provide

effective stewardship over public funds and assets and to provide financial management leadership for city government."

3. According to its website, the City of Atlanta's Department of Finance "manages and accounts for the City's financial resources ... prepares and monitors the annual budget, invests city funds to protect assets, maintains fiscal liquidity[,] ... maximizes income" and "[e]stablish[es] and maintain[s] sound fiscal policies." The City of Atlanta's Chief Financial Officer ("CFO") directed and managed the Department of Finance.

4. From approximately November 2011 to May 2018, defendant JIMMIE ANTHONY "JIM" BEARD served as the CFO of the City of Atlanta. In that capacity, BEARD listed his "primary responsibility" as "the oversight and management of the City's financial condition." According to the City of Atlanta and the Atlanta Police Department, because the CFO position was a non-law enforcement position, BEARD's role did not require him to carry or use a machine gun.

**City of Atlanta Credit Cards**

5. The City of Atlanta participated in a Bank of America Business Credit Card Program that provided credit cards and "financial support for those City employees who represented the City of Atlanta in an official capacity." In general, the City of Atlanta issued credit cards to its senior executives.

6. In June 2012, the City of Atlanta issued BEARD a credit card for official City of Atlanta business-related purchases. Before receiving the credit card, BEARD signed a user agreement on June 5, 2012, acknowledging the terms and conditions of its use, including agreeing that:

a. the credit card "shall be used for business purposes only;"

b. "personal charges" on the credit card were "prohibited;"

c. BEARD was "responsible for maintaining the integrity of the credit card account;" and

d. all expenses should be "documented and supported by physical (original) receipts."

7. On December 5, 2014, the City of Atlanta Department of Finance - which Beard oversaw - issued the City of Atlanta Credit Card Program Policy. As relevant here, the City of Atlanta imposed terms and conditions on the use of its credit cards, including that:

a. "credit card users should use good judgment when using a City credit card;"

b. credit cards were to be used "while traveling and attending conventions and training conferences in an official capacity;" and

c. "usage of the City's credit card[s] outside of the parameters of this policy is prohibited."

<u>**Financial Disclosure Statements and Travel Disclosure Reports**</u>

8. According to the City of Atlanta's Code of Ethics § 2-814(a)(1), certain City of Atlanta officials and employees must disclose all "positions of employment held by the official or employee in any business ... for all or any portion of the year, including a description of the type of business."

9. Based on his position as CFO and director of the Department of Finance, the City of Atlanta required BEARD to complete annually a Financial Disclosure Statement. As relevant here, for example:

a. On or about March 19, 2014, BEARD completed and electronically signed a 2014 Financial Disclosure Statement under the penalty of perjury. On the Financial Disclosure Statement, BEARD attested that in 2013 he was not "self-employed or employed by any corporation, partnership, proprietorship, [or] other business entity ... besides the City of Atlanta."

b. On or about March 1, 2017, BEARD completed and electronically signed a 2017 Financial Disclosure Statement under the penalty of perjury. On the Financial Disclosure Statement, BEARD attested that in 2016 he was not "self-employed or employed by any corporation, partnership, proprietorship, [or] other business entity ... besides the City of Atlanta" and a securities regulatory organization called the Municipal Securities Rulemaking Board ("MSRB").

10. According to the City of Atlanta's Code of Ethics §§ 2-801 and 2-815, City of Atlanta employees may be reimbursed for "travel, meals, and lodging, provided to an official or employee in connection with speaking engagements, participation on professional or civic panels, teaching, or attendance at conferences in an official capacity;" – but the officials or employees "[w]ithin 30 days of receipt of reimbursements ... must report such reimbursements on a form [known as a Travel Disclosure Report] ... filed with the municipal clerk with a copy sent by the official or employee to the ethics officer."

11. From 2013 to 2018, BEARD did not file any Travel Disclosure Reports for any of the travel reimbursements that he received.

**City of Atlanta Funds**

12. Abusing the power and authority granted to him as CFO, BEARD devised and executed a scheme to defraud with an object to obtain money and property from the City of Atlanta for private use. In particular:

a. BEARD used City of Atlanta funds to pay for personal travel expenses, such as airline tickets, luxury hotels, and limousines, for himself, his family, and his travel companion/s;

b. BEARD used City of Atlanta funds to buy items for personal use, including two machine guns;

c. BEARD used City of Atlanta funds to pay for travel to conferences or meetings after which the conference or meeting host reimbursed BEARD for the travel, but BEARD kept the money and did not give the reimbursement funds to the City of Atlanta; and

d. BEARD used City of Atlanta funds to pay for travel that BEARD subsequently claimed to the Internal Revenue Service ("IRS") were travel expenses related to his sole proprietorship consulting work or were unreimbursed employee expenses.

**Manner and Means**

13. In total, BEARD defrauded the City of Atlanta out of tens of thousands of dollars. By way of example only:

a. On or about November 13 and 22, 2013, BEARD's City of Atlanta credit card was used to pay approximately $542.50 ($479.80 for airfare and $62.70 for ground transportation) for BEARD to attend the University of Chicago's 2013 CFO Forum Conference in Chicago, Illinois. After the

conference, BEARD signed an expense form that was submitted to the University of Chicago, in which BEARD sought reimbursement of $542.50 and attested that "I further certify that I have not and will not be reimbursed for these expenses from any other source." Subsequently, the University of Chicago issued BEARD a check for $542.50 that BEARD cashed. BEARD cashed the check even though: (1) the City of Atlanta paid BEARD's travel expenses for the conference; and (2) BEARD claimed in submissions to the IRS that the travel related to his sole proprietorship consulting work. BEARD neither disclosed the existence of his consulting work to the City of Atlanta on his Financial Disclosure Statement, nor did he file a Travel Disclosure Report to notify the City of Atlanta about being reimbursed by the University of Chicago.

b. On or about August 4, 2015, BEARD's City of Atlanta credit card was used to pay approximately $1,278.72 for a room at the J.W. Marriott Hotel in Chicago, Illinois for a stay from July 31 to August 3, 2015. In listing the purpose for the hotel room, BEARD claimed to the City of Atlanta that he used the room to attend a "Swap Advisory Engagement." In fact, BEARD was not in Chicago from July 31 to August 3, 2015 (he was in Florida), and the hotel room was for BEARD's stepdaughter so she could attended the Lollapalooza music festival. Following BEARD's false and fraudulent statement about the purpose for the charge, the City of Atlanta paid the hotel charge.

c. On or about October 7, 2015, and from on or about November 19 to 21, 2015, BEARD's City of Atlanta credit card was used to pay

approximately $1,191.94 ($754.28 for lodging, $388.20 for airfare, and $49.46 for ground transportation) for BEARD to attend the University of Chicago's 2015 CFO Forum Conference in Chicago, Illinois. After attending the conference, BEARD signed an expense form that was submitted to the University of Chicago, in which BEARD sought reimbursement of $1,191.94 in travel expenses and attested that "I further certify that I have not and will not be reimbursed for these expenses from any other source." Subsequently, the University of Chicago issued BEARD a check for $1,191.94, which on or about December 31, 2015, BEARD deposited into his personal bank account – even though the City of Atlanta had paid for BEARD's travel expenses. BEARD did not file a Travel Disclosure Report to notify the City of Atlanta that the University of Chicago reimbursed BEARD for travel expenses that the City of Atlanta had already paid.

d. On or about December 14, 2015, BEARD contacted firearms manufacturer Daniel Defense, Inc. and, on or about December 17, 2015, BEARD ordered two custom-built, full-automatic DDM4 rifles. On or about March 16, 2016, the machine guns were delivered to Atlanta City Hall, after which BEARD - in an act that exceeded his authority as CFO – took personal possession of the machine guns. On or about March 30, 2016, BEARD had the City of Atlanta issue a $2,641.90 check to Daniel Defense, Inc. to pay for the two machine guns. In connection with the purchase, BEARD completed and submitted to Daniel Defense, Inc. a U.S. Department of the Treasury tax exemption form, in which BEARD

falsely certified that the machine guns were for the exclusive use of the Atlanta Police Department.

e. On or about April 28, 2016, BEARD's City of Atlanta credit card was used to pay approximately $648.20 for roundtrip airfare from Atlanta to New Orleans, Louisiana, for travel on Saturday April 30 to Sunday May 1, 2016. BEARD's City of Atlanta credit card was charged for this trip even though: (1) the trip occurred over a weekend and BEARD's City of Atlanta work calendar does not list any meetings or appointments in New Orleans for April 30 or May 1, 2016; (2) BEARD went to New Orleans with a personal travel companion; (3) BEARD and his travel companion attended the 2016 New Orleans Jazz and Heritage Festival; and (4) BEARD claimed in submissions to the IRS that the New Orleans trip was either for travel related to his sole proprietorship consulting work or the trip was an expense BEARD incurred as CFO for which the City of Atlanta did not pay. BEARD did not disclose the existence of any sole proprietorship to the City of Atlanta on his 2017 Financial Disclosure Statement.

f. On or about June 22 and 23, 2016, BEARD's City of Atlanta credit card was used to pay approximately $951.20 for airfare (BEARD's original ticket cost $1,252.20) to Washington, D.C. and $24.32 for a taxi, for BEARD to meet with the MSRB. After the meeting, BEARD sought reimbursement from the MSRB by sending them a $24.32 taxi receipt and a $1,252.20 airfare receipt – even though BEARD changed flights and his ticket actually cost $951.20. Subsequently, the MSRB issued BEARD a

check for $1,276.52 ($1,252.20 for airfare and $24.32 for a taxi). On or about August 8, 2016, BEARD deposited the check into his personal bank account – even though: (1) the City of Atlanta paid for his flight and taxi; and (2) in submissions to the IRS, BEARD claimed that the cost of the flight was related to his sole proprietorship consulting work or the trip was an expense BEARD incurred as CFO or a member of the MSRB for which neither the City of Atlanta nor the MSRB paid. BEARD did not disclose the existence of any sole proprietorship to the City of Atlanta on his 2017 Financial Disclosure Statement, nor did he file a Travel Disclosure Report to notify the City of Atlanta about being reimbursed by the MSRB.

g. On or about July 30 and August 2, 2016, BEARD's City of Atlanta credit card was used to pay a total of approximately $2,599.26 for a stay at the J.W. Marriott Hotel in Chicago, Illinois from July 27 to August 1, 2016. In fact, BEARD was not in Chicago from July 27 to August 1, 2016 (he was in Georgia and South Carolina), and the hotel room was for BEARD's stepdaughter so she could attended the Lollapalooza music festival.

h. On or about December 13, 2016, BEARD's City of Atlanta credit card was used to pay approximately $1,355.68 for a room for two guests at the Atlanta St. Regis Hotel, for a stay from December 15 to 17, 2016 (Thursday to Saturday). During the stay, BEARD's City of Atlanta card was used to pay for additional amenities, including $200 per night for an upgraded room, $70 for private dining, and $80 for rose-petal turndown service. BEARD used his City of Atlanta credit card to pay for the St.

Regis Hotel stay, even though: (1) BEARD lived in Atlanta; (2) BEARD's wife stayed at the hotel with him; (3) BEARD's City of Atlanta work calendar does not list any work events or meetings at the St. Regis Hotel from December 15 to 18, 2016; and (4) for Friday, December 17, 2016, BEARD's City of Atlanta work calendar listed the notation "Do Not Schedule – PTO," a common initialism for "Paid Time Off."

**Execution of the Scheme**

14. On or about the dates listed in Column B, in the Northern District of Georgia and elsewhere, defendant JIMMIE ANTHONY "JIM" BEARD, for the purpose of executing and attempting to execute the scheme and artifice to defraud set forth above, transmitted and caused to be transmitted by means of wire communications in interstate commerce, certain signs, signals, pictures, and sounds; that is – the electronic transmissions listed in Column E:

| A<br>Count | B<br>Date | C<br>Amount | D<br>Entity | E<br>Description |
|---|---|---|---|---|
| 1 | 9/30/2015 | $1,278.12 | Bank of America | Phone payment for room at J.W. Marriott in Chicago, IL used during Lollapalooza |
| 2 | 12/9/2015 | $1,194.94 | University of Chicago | Email for personal reimbursement of travel paid for by the City of Atlanta |
| 3 | 12/17/2015 | $2,641.90 | Daniel Defense, Inc. | Email regarding purchase order for two machine guns |

All in violation of Title 18, United States Code, Sections 1343 and 1349.

**COUNT 4**

*(Federal Program Theft – 18 U.S.C. § 666(a)(1)(A))*

15. The Grand Jury re-alleges and incorporates by reference the factual allegations from Paragraphs 1 to 14 of this Indictment as if fully set forth here.

16. From on or about July 30, 2015 to on or about July 29, 2016, in the Northern District of Georgia and elsewhere, defendant JIMMIE ANTHONY "JIM" BEARD, being an agent of the City of Atlanta government, embezzled, stole, obtained by fraud, knowingly converted, and intentionally misapplied at least $5,000 in money and property, under the care, custody, and control of the City of Atlanta, a local government, that in the one-year period listed above received benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance; in violation of Title 18, United States Code, Section 666(a)(1)(A).

**COUNT 5**

*(Federal Program Theft – 18 U.S.C. § 666(a)(1)(A))*

17. The Grand Jury re-alleges and incorporates by reference the factual allegations from Paragraphs 1 to 14 of this Indictment as if fully set forth here.

18. From on or about July 30, 2016 to on or about July 29 2017, in the Northern District of Georgia and elsewhere, defendant JIMMIE ANTHONY "JIM" BEARD, being an agent of the City of Atlanta, embezzled, stole, obtained by fraud, knowingly converted, and intentionally misapplied at least $5,000 in money and property, under the care, custody, and control of the City of Atlanta, a local government, that in the one-year period listed above received benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan,

guarantee, insurance, and other form of Federal assistance; in violation of Title 18, United States Code, Section 666(a)(1)(A).

**COUNT 6**

*(Possession of a Machinegun – 18 U.S.C. § 922(o))*

19. The Grand Jury re-alleges and incorporates by reference the factual allegations from Paragraphs 1 to 14 of this Indictment as if fully set forth here.

20. In or about March 2017, in the Northern District of Georgia, defendant JIMMIE ANTHONY "JIM" BEARD, knowingly possessed and transferred at least one of the following firearms, each being a machinegun as that term is defined in Title 18, United States Code, Section 921(a)(23), and Title 26, United States Code, Section 5845(b), that is: (a) one custom-built, full-automatic Daniel Defense 5.56 millimeter DDM4 rifle, configured as a DD MK18, equipped with a 10.3 inch barrel; and (b) one custom-built, full-automatic Daniel Defense 5.56 millimeter DDM4 rifle, configured as a DD M4A1, equipped with a 14.5 inch barrel; in violation of Title 18, United States Code, Sections 922(o) and 924(a)(2).

**COUNT 7**

*(False Entry on an Application or Record – 26 U.S.C. § 5861(l))*

21. The Grand Jury re-alleges and incorporates by reference the factual allegations from Paragraphs 1 to 14 of this Indictment as if fully set forth here.

22. On or about April 14, 2016, in the Northern District of Georgia, defendant JIMMIE ANTHONY "JIM" BEARD, knowingly made a false entry on an application and record required by chapter 53 of Title 26, by certifying that any firearms purchased by the City of Atlanta from Daniel Defense, Inc. (a firearms manufacturer) from December 17, 2015 to December 31, 2016, were exempt from

taxation because said firearms were "for the exclusive use of [the] Atlanta Police Department," knowing such entry to be false, in that – BEARD purchased two machine guns from Daniel Defense, Inc. for his own use, in violation of Title 26, United States Code, Sections 5848(b), 5861(l), and 5871.

## COUNT 8

*(Obstructing the Internal Revenue Laws - 26 U.S.C. § 7212(a))*

23. The Grand Jury re-alleges and incorporates by reference the factual allegations from Paragraphs 1 to 14 of this Indictment as if fully set forth here.

### Background

24. The Internal Revenue Service ("IRS") was and is an agency of the United States Department of Treasury responsible for administering the tax laws of the United States and for the collection of taxes owed to the United States.

25. In 2013, JIMMIE ANTHONY "JIM" BEARD served as the Chief Financial Officer for the City of Atlanta, earning a salary of approximately $221,108.

26. Given BEARD's executive-level position, the City of Atlanta required BEARD to file a Financial Disclosure Statement. On or about March 19, 2014, BEARD completed and electronically signed a 2014 Financial Disclosure Statement under the penalty of perjury, attesting that in 2013, he was not "self-employed or employed by any corporation, partnership, proprietorship, [or] other business entity ... besides the City of Atlanta."

27. Yet, on or about April 15, 2014, BEARD submitted to the IRS under penalty of perjury a Form 1040 Individual Income Tax Return for tax year 2013, to which BEARD attached a Schedule C claiming losses from a personal business.

a. On the Schedule C, BEARD claimed: (1) that he owned a sole proprietorship, with its principal business or profession listed as a "Consultant;" (2) that BEARD incurred over $33,500 in alleged business losses in 2013; and (3) that his alleged business losses included $12,000 for travel expenses and $7,115 for deductible meals and entertainment expenses.

28. In or about July 2015, the IRS advised BEARD that it was auditing his 2013 tax return and requested that BEARD provide documentation to support his Schedule C business expenses.

29. In September 2015, December 2015, and April 2016, BEARD responded to the IRS's requests for documentation by submitting (or causing to be submitted) letters, receipts, and expense reports to justify the alleged business expenses claimed on his 2013 Schedule C.

30. In his submissions to the IRS, BEARD falsely claimed that he incurred airfare, hotel, and meal expenses related to his consulting business – when in fact BEARD's submissions to the IRS included:

a. Travel receipts for airfare and hotels that BEARD paid for with his City of Atlanta credit card;

b. Expense reports for personal meals, such as with his wife or personal companions; and

c. Altered receipts where BEARD: (1) hid that the actual billing address for charges was Atlanta City Hall (as opposed to the address of BEARD's alleged consulting business), and (2) hid that the last four digits of the credit

card number used were from BEARD's City of Atlanta credit card (as opposed to BEARD's personal or business credit card).

**Obstructing and Impeding**

31. From in or about July 6, 2015 to September 26, 2016, in the Northern District of Georgia and elsewhere, defendant JIMMIE ANTHONY "JIM" BEARD, knowing of and reasonably foreseeing the 2013 tax audit described above, corruptly obstructed and impeded, and corruptly endeavored to obstruct and impede, the due administration of the internal revenue laws, that is – the 2013 tax audit, by committing and causing to be committed various acts, each such act having a nexus to the 2013 tax audit, including:

a. On or about September 22, 2015, December 29, 2015, and April 6, 2016, BEARD submitted receipts, letters, and expense reports to the IRS to justify his alleged Schedule C business expenses, even though: (1) the City of Atlanta had paid for certain of the expenses (not BEARD), (2) the expenses were personal (not business related), or (3) BEARD had altered the receipts.

b. On or about September 22, 2015 and April 6, 2016, BEARD submitted to the IRS airfare and hotel receipts that BEARD claimed were travel expenses for "Business Meetings" in New York City in August 2013 related to his consulting work – when in fact: (1) the City of Atlanta paid for BEARD's airfare and hotel; (2) BEARD represented to the City of Atlanta that the trip related to Atlanta's "Water & Wastewater Bonds Series 2013A"project; and (3) BEARD altered the hotel receipt submitted to the IRS by covering the billing address (which was Atlanta City Hall).

BEARD also claimed in his submissions to the IRS that he paid more than $325 for a business dinner bill attended by an individual with the initials K.A. and allegedly by "Goldman Sachs." In fact, K.A. and BEARD did not have a business relationship, K.A. never attended a dinner with Goldman Sachs, and K.A. was a personal companion of BEARD.

c. On or about September 22, 2015 and April 6, 2016, BEARD submitted to the IRS airfare and hotel receipts that BEARD claimed were for travel expenses for "Business Meetings" in New York City in September 2013, related to his consulting work – when in fact: (1) the City of Atlanta paid for BEARD's airfare and hotel; (2) BEARD represented to the City of Atlanta that the trip related to a "Water/Wastewater Swap Novation Session;" and (3) BEARD altered the airfare receipt submitted to the IRS by covering the last four digits of the credit card number used (which was BEARD's City of Atlanta credit card).

d. On or about September 22, 2015 and April 6, 2016, BEARD submitted to the IRS a flight receipt and hotel/dinner expense report allegedly related to BEARD's consulting business. In his submissions, BEARD claimed the receipt and report related to travel expenses for "Business Meetings" in New Orleans, Louisiana in September 2013. In fact: (1) BEARD's trip to New Orleans was personal; (2) BEARD traveled to New Orleans with an individual with the initials M.A.; (3) BEARD and M.A. did not have a business relationship; (4) BEARD paid for M.A. to travel to New Orleans; and (5) the purpose of the trip was for BEARD and M.A. to attend a football game between the Atlanta Falcons and New Orleans Saints.

e. On or about March 28, 2016, BEARD falsely advised an IRS auditor that all of the expenses listed in the records BEARD provided to the IRS were business expenses.

32. Based on BEARD's acts and submissions, the IRS allowed BEARD to deduct $12,000 in business travel expenses.

All in violation of Title 26, United States Code, Section 7212(a).

## Forfeiture Provisions

33. Upon conviction of one or more of the offenses alleged in Counts 1 to 5 of this Indictment, defendant JIMMIE ANTHONY "JIM" BEARD, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, constituting or derived from proceeds traceable to the offense, including but not limited to:

a. **Money Judgment**: A sum of money in United States currency equal to the amount of proceeds the defendant obtained as a result of the offense for which the defendant is convicted.

b. **Firearms**:

i. One full-automatic Daniel Defense 5.56mm DDM4 rifle, configured as a DD MK18, bearing serial number DDM4073808; and

ii. One full-automatic Daniel Defense 5.56mm DDM4 rifle, configured as a DD M4A1, bearing serial number DDM4073809.

34. Upon conviction of one or more of the offenses alleged in Count 6 of this Indictment, defendant JIMMIE ANTHONY "JIM" BEARD, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924(d) and Title 28,

United States Code, Section 2461(c), any firearms and ammunition involved in the offense, including: (a) one full-automatic Daniel Defense 5.56mm DDM4 rifle, configured as a DD MK18, bearing serial number DDM4073808; and (b) one full-automatic Daniel Defense 5.56mm DDM4 rifle, configured as a DD M4A1, bearing serial number DDM4073809.

35. Upon conviction of the offense alleged in Count 7 of this Indictment, defendant JIMMIE ANTHONY "JIM" BEARD, shall forfeit to the United States, pursuant to Title 26, United States Code, Section 5872 and Title 28, United States Code, Section 2461(c), any firearms involved in the offense, including: (a) one full-automatic Daniel Defense 5.56mm DDM4 rifle, configured as a DD MK18, bearing serial number DDM4073808; and (b) one full-automatic Daniel Defense 5.56mm DDM4 rifle, configured as a DD M4A1, bearing serial number DDM4073809.

36. If, as a result of any act or omission of the defendant, any property subject to forfeiture:

a. Cannot be located upon the exercise of due diligence;
b. Has been transferred or sold to, or deposited with, a third person;
c. Has been placed beyond the jurisdiction of the Court;
d. Has been substantially diminished in value; or
e. Has been commingled with other property which cannot be subdivided without difficulty;

the United States intends, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property

or seek a money judgment against said defendant for any amount that would constitute the proceeds of such violation.

A True BILL

FOREPERSON

BYUNG J. PAK
*United States Attorney*

JEFFREY W. DAVIS
*Assistant United States Attorney*
Georgia Bar No. 426418

TREVOR C. WILMOT
*Assistant United States Attorney*
Georgia Bar No. 936961

600 U.S. Courthouse ▪ 75 Ted Turner Drive, SW
Atlanta, GA 30303 ▪ 404-581-6000