IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

v.

JIMMIE ANTHONY (JIM) BEARD,

    Defendant.

CRIMINAL CASE NO.
1:20-cr-00351-SCJ-LTW

## FINAL REPORT AND RECOMMENDATION AND ORDER CERTIFYING THIS CASE READY FOR TRIAL

This matter is before the Court on five Motions filed by Defendant Jimmie Anthony ("Jim") Beard: a Motion for Bill of Particulars ([Doc. 38]), a Motion to Suppress ([Doc. 45]), a Motion to Dismiss two counts of the Indictment ([Doc. 46]), an alternative Motion to Sever one of those counts ([Doc. 47]), and a Motion to Strike Surplusage ([Doc. 48]). For the reasons below, the undersigned **RECOMMENDS** that the Motions ([Docs. 38, 45, 46, 47, 48]) be **DENIED**.

## BACKGROUND

This case arose out of an investigation into public corruption and fraud by public officials in the City of Atlanta government. [Doc. 45-1 at 16 ¶13]. Defendant was the Chief Financial Officer ("CFO") for the City of Atlanta. [Id. ¶14]. From approximately March 2014 to March 2018, Defendant allegedly used City of Atlanta

funds for personal trips, hotel stays, and other expenses on at least eight specifically described occasions.  [Id. at 17–22 ¶¶17–26].  While working for the City of Atlanta, Defendant was also a salaried member of the Municipal Securities Rulemaking Board ("MSRB").  [Id. at 23 ¶30].  Defendant allegedly took at least ten trips for MSRB-related business, charged the expenses for those trips to the City of Atlanta, and received "reimbursement" from MSRB for the travel expenses.  [Id. at 24 ¶¶32–34].  In December 2015, Defendant contacted a firearm distributor to purchase two fully automatic custom rifles that he claimed were "for the exclusive use of [the] Atlanta Police Department."  [Id. at 25–26 ¶¶38–39].  Defendant used City of Atlanta funds to pay for the machineguns, but the Atlanta Police Department "never ordered or requested" them and Defendant allegedly treated the weapons as "his guns."  [Id. at 26–27 ¶¶40–42].  Defendant also allegedly used City of Atlanta funds to buy a sight and a spacer for one of the machineguns.  [Id. at 27 ¶¶43–44].

Based on the foregoing, Magistrate Judge Alan J. Baverman issued a search warrant for information maintained by Oath, Inc., associated with the email address jimabeard@aol.com (the "AOL Warrant").  [Id. at 1].  The AOL Warrant sought certain categories of information from August 1, 2015, to April 1, 2018.  [Id. at 3–4].  The information included "[t]he contents of all emails associated with the account,"

including attachments to the emails, and identifying information regarding the emails; "records or other information regarding the identification of the [jimabeard@aol.com] account"; "records or other information stored at any time by an individual using the account, including address books, contact lists, calendar data, pictures, and files; and" "records pertaining to communications between Oath, Inc. and any person regarding the account." [Id.].  The AOL Warrant limited the scope of what could be seized to records that were "evidence, fruits, and instrumentalities of violations" of specific crimes, discussed more below.  [Id. at 4–5].

Later, the Government sought and received a search warrant for information associated with the Apple ID jimabeard@aol.com (the "Apple Warrant").  [Doc. 45-2].  The affidavit in support of the Apple Warrant contains much of the information discussed above but has some additional details as well.  The affidavit describes the alleged use of City of Atlanta funds for personal trips on at least four other occasions. [Doc. 45-2 at 15–18 ¶¶22, 25, 28, 29].  The affidavit also describes corroborating evidence seized from the iCloud account of Defendant's wife.  [Id. at 18 ¶30]. Magistrate Judge Russell G. Vineyard signed the Apple Warrant, authorizing the search and seizure of certain information associated with the account from July 1, 2015, through March 30, 2018.  [Id. at 3–5].

The information to be disclosed by Apple included "records or other information regarding the identification of the account"; "records or other information regarding the devices associated with, or used in connection with, the account"; the "contents of all files and other records stored on iCloud"; all "activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers)"; all "records and information regarding locations where the account was accessed, including all data stored in connection with Location Services"; all "records pertaining to the types of service use"; all "records pertaining to communications between Apple and any person regarding the account"; and all "files, keys, or other information necessary to decrypt any data produced in an encrypted form." [Id. at 3–4]. As with the AOL Warrant, the information to be seized by the Government was limited in scope to records that were "evidence, fruits, and instrumentalities of violations" of specific crimes, discussed more below. [Id. at 4–5].

On September 15, 2020, Defendant was charged in an eight-count indictment. [Doc. 1]. Counts 1 through 3 charge wire fraud in violation of 18 U.S.C. § 1343. [Doc. 1 at 1–10 ¶¶1–14]. Counts 4 and 5 charge federal program theft in violation of 18 U.S.C. § 666(a)(1)(A). [Doc. 1 at 11–12 ¶¶15–18]. Count 6 charges Defendant with possession of a machinegun in violation of 18 U.S.C. § 922(o). [Doc. 1 at 12

¶¶19–20].  Count 7 charges a false entry on an application or record required by Chapter 53 of Title 26, in violation of 26 U.S.C. § 5861(*l*).  [Doc. 1 at 12–13 ¶¶21–22].  And Count 6 charges Defendant with obstructing the internal revenue laws in violation of 26 U.S.C. § 7212(a).  [Doc. 1 at 13–17 ¶¶23–32].  The specific language used in the indictment is discussed below to the extent it is relevant to the pending motions.

## **LEGAL ANALYSIS**

Defendant moves to suppress the evidence obtained via the AOL and Apple Warrants, arguing they are impermissible "general warrants."  [Doc. 45].  Defendant also moves to strike language from the Indictment, arguing it contains too much information relating to the wire fraud counts and the count alleging obstruction of internal revenue laws. [Doc. 48].  But then Defendant contends the Indictment contains too little information regarding other counts.  [Doc. 38].  Defendant also asserts the count alleging obstruction of internal revenue laws is barred by the statute of limitations and that the count alleging a violation of 18 U.S.C. § 922(o) infringes on his constitutional right to own a machinegun.  [Doc. 46].  In the alternative, Defendant argues the possession of a machinegun count should be tried separately.  [Doc. 47].  The undersigned discusses each motion in turn.

A.    **The Motion to Suppress**

The Fourth Amendment provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  "A description is sufficiently particular when it enables the searcher to reasonably ascertain and identify the things authorized to be seized." United States v. Wuagneux, 683 F.2d 1343, 1348 (11th Cir. 1982).  This "particularity requirement must be applied with a practical margin of flexibility, depending on the type of property to be seized, and that a description of property will be acceptable if it is as specific as the circumstances and nature of activity under investigation permit." Id. at 1349.  In cases, such as the one at bar, involving financial transactions and "widespread allegations of various types of fraud, reading the warrant with practical flexibility entails an awareness of the difficulty of piecing together the 'paper puzzle.'" Id.

Defendant argues the evidence obtained via the above-discussed search warrants should be suppressed because the warrants were not "limited in the contents sought and there was no connection between the items sought and the crimes under investigation." [Doc. 45 at 5].  Defendant's assertion that there "was no connection between the items sought and the crimes under investigation" is incorrect.  The warrants only authorized

6

the Government to seize information "that constitutes fruits, contraband, evidence, and instrumentalities of violations of" the exact crimes charged in the Indictment.  [Doc. 45-1 at 4]; [Doc. 45-2 at 5].  The affidavits in support of each warrant clearly establish probable cause to believe the searches would reveal evidence related to those crimes, which Defendant never challenges.  <u>See</u> [Doc. 64 at 4] ("Mr. Beard does not contest (for purposes of this motion only) that there was probable cause that evidence of the offenses being investigated might exist in his AOL or Apple ID accounts.").

Defendant's argument then is that the warrants were not "limited in the contents sought," which he asserts makes them impermissible "general warrants."  [Doc. 45 at 5–9].  Contrary to Defendant's argument, warrants like those at issue in this case have not "routinely been found unconstitutionally broad."  <u>See</u> [Doc. 64 at 4].  In support of his assertion, Defendant two cases.  [<u>Id</u>.].  The first—the case Defendant primarily relies on—is an unpublished, out of circuit order that is wholly unpersuasive.  <u>See</u> <u>In re Applications for Search Warrants for Info. Associated with Target Email Accts./Skype Accts.</u>, No. 13-MJ-8163-JPO, 2013 WL 4647554 (D. Kan. Aug. 27, 2013) (the "<u>Kansas Order</u>").  The analysis in that order has been rejected by another judge in the same district because it relied on cases involving "warrants that failed to limit the seizure of items with reference to a particular criminal statute."  <u>United States</u>

v. Deppish, 994 F. Supp. 2d 1211, 1221 (D. Kan. 2014).  The analysis has also been roundly and persuasively rejected by other district courts as well.  See United States v. Scully, 108 F. Supp. 3d 59, 94–95 (E.D.N.Y. 2015); In the Matter of a Warrant for All Content & Other Info. Associated with the Email Acct. xxxxxxx gmail.com Maintained at Premises Controlled By Google, Inc., 33 F. Supp. 3d 386, 390–96 (S.D.N.Y. 2014).

The essential problem with the Kansas Order is that it does not properly distinguish between "the place to be searched" and "the persons or things to be seized." Both must be described "particularly."  U.S. Const. amend. IV.  But "the place to be searched" is not the same as the "things to be seized."  The place to be searched can be, and usually is, mostly filled with things that are not relevant to the crimes under investigation.  But a warrant authorizing the search of such a place—like a house or a computer hard drive—is not overbroad simply because the place contains things that are not evidence.  Instead, the problem "of a general, exploratory rummaging" is solved by the Fourth Amendment's final clause "requiring a 'particular description' of the things to be seized."  Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971), *holding modified on other grounds by* Horton v. California, 496 U.S. 128, (1990).

The "central objectionable feature" of general warrants "was that they provided no judicial check on the determination of the executing officials that the evidence

available justified an intrusion into any particular home." <u>Steagald v. United States</u>, 451 U.S. 204, 220 (1981). That is not a problem here because the warrants describe particular places to be searched—accounts associated with jimabeard@aol.com—and they contain evidence establishing probable cause to justify the intrusion. [Docs. 45-1, 45-2]. The searches were further limited by a particular description of the things to be seized, and those things were limited to items "that constitute[ ] fruits, contraband, evidence, and instrumentalities of violations of" the exact crimes charged in the Indictment. [Doc. 45-1 at 4]; [Doc. 45-2 at 5]. The fact that "some innocuous documents [would] be examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized" did not automatically render the warrants overbroad. <u>Andresen v. Maryland</u>, 427 U.S. 463, 482 n.11 (1976).

Defendant cites, and the Court has found, no binding authority requiring law enforcement to let some other entity, such as Apple or AOL, conduct the search and determine which items should be seized. <u>See</u> [Docs. 45, 64]. In support of the AOL Warrant, the FBI agent noted that he investigated whether Oath, Inc. "had the ability to filter emails in a target account and provide only emails containing certain types of content or that were sent/received by specified parties." [Doc. 45-1 at 11 ¶4]. The agent received no response, but he further noted that even if the company had such

capability it was "not privy to all of the details of this investigation" and would likely not "have the knowledge or resources necessary to reasonably distinguish relevant information from other information contained in the [jimabeard@aol.com account]." [Id.]  This is the only evidence in the record, and Defendant has offered nothing to rebut it.   Likewise, it accords with the common sense understanding that "non-governmental employees untrained in the details of the criminal investigation likely lack the requisite skills and expertise to determine whether a document is relevant to the criminal investigation."   Matter of Search of Info. Associated with [redacted]@mac.com that is Stored at Premises Controlled by Apple, Inc., 13 F. Supp. 3d 157, 165 (D.D.C. 2014).

The other case Defendant relies on is even less persuasive because it did not, in fact, conclude that any warrants were "unconstitutionally broad."  See [Doc. 64 at 4]. Defendant relies on *dicta* where the Eleventh Circuit suggested a "procedure [that] would have undermined" a particularity challenge, but the Eleventh Circuit explicitly did "not decide whether the . . . warrants violated the Fourth Amendment."  United States v. Blake, 868 F.3d 960, 974 (11th Cir. 2017).  Notably, the Government here did exactly what the Eleventh Circuit said "the warrants should have requested" in Blake— the warrants were limited to "data only from the period of time" when Defendant was

allegedly committing the offenses charged in the Indictment.  Id.  Contrary to Defendant's argument, the Blake Court did not hold that the warrants "needed to be limited" further.  See [Doc. 64 at 5].  Instead, the Blake Court noted "the warrants *could have* limited the request to messages sent to or from [particular] persons."  868 F.3d at 974 (emphasis added).  But the fact that a warrant "could have" been more particular does not mean it is constitutionally infirm.  The undersigned concludes that the warrants challenged by Defendant were sufficiently particular and not overbroad, "general warrants."[1]

Even if the warrants were potentially overbroad, Defendant would not be entitled to suppression.  The exclusionary rule "is not an individual right."  Herring v. United States, 555 U.S. 135, 141 (2009).  It is a "last resort" whose "sole purpose" is "to deter future Fourth Amendment violations."  United States v. Smith, 741 F.3d 1211, 1219 (11th Cir. 2013).  Unless "a reasonably well-trained officer would have known that the

---

[1] Defendant makes an off-hand, unsubstantiated assertion that the Government "seized absolutely everything in the email account and Apple ID at issue." [Doc. 45 at 6].  Setting aside the fact that the Government did not even review "everything" in the accounts, the Government seized less than 5% of the emails searched and seized only a subset of the documents produced by Apple. [Doc. 52 at 18 n.2].  That fact bolsters the conclusion that the warrants were not "general warrants" and rebuts any unsupported suggestion that the Government exceeded the scope of the warrants.

11

search was illegal," the evidence will not be excluded.  United States v. Leon, 468 U.S. 897, 922 n.23 (1984).  This is the good-faith exception to the exclusionary rule.

Defendant argues "the warrants—totally lacking in particularity—were so facially deficient that the executing officers could not have reasonably presumed them to be valid." [Doc. 45 at 10].  The undersigned disagrees that the warrants were lacking in particularity, but they were absolutely not as "facially deficient" as Defendant argues.  See [id.].  The warrants at issue in Blake "were not 'so facially deficient' that the FBI agents who executed them could not have reasonably believed them to be valid."  868 F.3d at 975.  As discussed above, the warrants in this case are *more particular* than the warrants in Blake because they contain the exact kind of temporal limits the Blake Court said "the warrants should have."  Id. at 974.  *A fortiori*, the warrants in this case "were not 'so facially deficient' that the FBI agents who executed them could not have reasonably believed them to be valid," and the good-faith exception would apply.  Id. at 975.  For the foregoing reasons, the undersigned **RECOMMENDS** that Defendant's Motion to Suppress ([Doc. 45]) be **DENIED**.

### B.   The Motion to Strike Surplusage

"Upon the defendant's motion, the court may strike surplusage from the indictment or information."  Fed. R. Crim. P. 7(d).  But such a motion "should not be

granted unless it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial." United States v. Awan, 966 F.2d 1415, 1426 (11th Cir. 1992) (quotation marks omitted). "This is a most exacting standard." Id. (alteration adopted, quotation marks omitted).

Defendant fails to meet the "exacting standard" required for striking language from an indictment. Instead, Defendant simply makes conclusory assertions that the challenged paragraphs are "clearly prejudicial," but he never explains *how* the language is allegedly prejudicial and cites no authority in support of striking language that makes a defendant's "conduct appear pervasive, cumulative, and duplicative." See [Doc. 63]. But more importantly, Defendant is obviously wrong in asserting the challenged allegations are not relevant to the charges in the Indictment. Defendant repeatedly asserts that Paragraph 13(b) refers to events from 2013, even though that is incorrect. See [Doc. 48 at 2]; [Doc. 63 at 3]; see also [Doc. 1 at 6 ¶13(b)].[2]

Defendant also argues "conduct that occurred in 2013 is not relevant to the tax charges." [Doc. 63 at 2]. But Count 8 relates to a "2013 tax audit." [Doc. 1 at 15 ¶31]. Completely unchallenged allegations from the Indictment clearly explain how

---

[2] Likewise, in reply, Defendant asserts "Paragraph 9(b) relates to a Financial Disclosure that was executed in 2013." [Doc. 63 at 2]. It does not. [Doc. 1 at 4 ¶9(b)].

Defendant's 2013 "travel expenses" are relevant to the audit.  [Id. at 15–16 ¶31(b)].

Defendant swore to the IRS that the expenses were "business expenses" related to "his

consulting work."  [Id. ¶31(a), (b)].  But Defendant swore to the City of Atlanta that he

had no outside business in 2013, represented that the trip was for City of Atlanta

business, and got the City to pay his airfare and hotel.  [Id. at 4 ¶9(a)]; [id. at 13 ¶26];

[id. at 15–16 ¶31(b)].  Paragraph 13(a) is likewise relevant because it describes a 2013

trip that was paid for by the City of Atlanta even though Defendant allegedly told the

IRS the trip was "related to his sole proprietorship consulting."  [Doc. 1 at 5–6 ¶13(a)].

The fact that the trips themselves occurred in 2013 does not make them irrelevant.  The

trips are self-evidently relevant to Count 8 because it involves a 2015–16 audit of

Defendant's 2013 taxes.  [Id. at 13–17 ¶¶23–33].

Defendant contends that "none of [the] trips [discussed in Paragraphs 13(e)–(g)]

form the basis of any count in the indictment."  [Doc. 48 at 4].[3]  As will be discussed

---

[3] In his reply brief, Defendant asserts that the mention of "a personal travel
companion" is "salacious."  [Doc. 63 at 3].  The Court will not consider an argument
raised for the first time in a reply brief because the Government was deprived of an
opportunity to respond to this argument.  Even if the Court were to consider it, there is
nothing "salacious" about taking a trip with a friend.  But the fact Defendant allegedly
brought "a personal travel companion" on a trip is relevant to whether he improperly
used government funds for personal purposes.  See [Doc. 1 at 8 ¶13(e)].

below, Defendant also argues "he does not know what he is accused of stealing [in Counts 4 and 5], or when he is accused of stealing it."  [Doc. 60 at 2].  It is not a coincidence that the trips described in Paragraphs 13(e) through (h)[4] correspond to the timeframe of Counts 4 and 5 and that those paragraphs explain how Defendant allegedly stole money from the City of Atlanta by getting it to pay for Defendant's personal excursions.  [Doc. 1 at 8–9 ¶13(e)–(h)]; see also [id. at 11–12 ¶¶15–18]. Connecting the dots, Paragraphs 13(e) through (h) are relevant because they explain to Defendant "what he is accused of stealing [and] when he is accused of stealing it."  See [Doc. 60 at 2].  For the foregoing reasons, the undersigned **RECOMMENDS** that Defendant's Motion to Strike Surplusage ([Doc. 48]) be **DENIED**.

### C.   The Motion for a Bill of Particulars

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c).  "An indictment need do little more than track the language of the statute charged to be sufficient." United States v. Adkinson, 135 F.3d 1363, 1375 n. 37 (11th Cir. 1998).  In addition to

---

[4] Defendant briefly mentions Paragraph 13(h) but never asks the Court to strike that paragraph.  [Doc. 48 at 2]; see also [Doc. 63].  Even if Defendant had, it is relevant for the reasons discussed herein.

the statutory language, an indictment needs "facts and circumstances that will inform the accused of the specific offense, coming under the general description, with which he is charged." Russell v. United States, 369 U.S. 749, 765 (1962) (citations omitted). But an indictment does not have to "detail the factual proof that will be relied upon to support the charges." United States v. Sharpe, 438 F.3d 1257, 1263 n.3 (11th Cir. 2006) (quoting United States v Crippen, 579 F.2d 340, 342 (5th Cir. 1978)). The indictment is "legally sufficient if it: (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." United States v. Schmitz, 634 F.3d 1247, 1259 (11th Cir. 2011) (quoting United States v. Jordan, 582 F.3d 1239, 1245 (11th Cir. 2009)).

Defendant moves for a Bill of Particulars providing further detail as to "the allegations in Counts 4 and 5 of the Indictment." [Doc. 38]. Counts 4 and 5 allege violations of 18 U.S.C. § 666(a)(1)(A), which prohibits the embezzlement, theft, fraudulent obtainment, or intentional misapplication of property valued at $5,000 or more from a program receiving federal funds. [Doc. 1 at 11–12 ¶¶15–18]; see also 18 U.S.C. § 666(a)(1)(A). As noted above, Defendant argues "he does not know what he

is accused of stealing, or when he is accused of stealing it." [Doc. 60 at 2]. Looking at the Indictment, Count 4 clearly says Defendant allegedly stole "at least $5,000 in money and property" between "July 30, 2015 [and] July 29, 2016." [Doc. 1 at 11 ¶16]. Count 5 clearly says Defendant allegedly stole "at least $5,000 in money and property" between "July 30, 2016 [and] July 29, 2017." [Doc. 1 at 11–12 ¶18]. Thus, Defendant should know "know what he is accused of stealing [and] when he is accused of stealing it." [Doc. 60 at 2]. Counts 4 and 5 track the language of the statute, let Defendant know the specific portion of the statute he is accused of violating, and give him a clear timeframe. [Doc. 1 at 11–12 ¶¶15–18]. Generally speaking, that is enough. Adkinson, 135 F.3d at 1375 n. 37; Russell, 369 U.S. at 765.

But as the Government notes, the Indictment provides much more specific detail in the first fourteen paragraphs. [Doc. 51 at 11–12]; see also United States v. Jordan, 582 F.3d 1239, 1245 (11th Cir. 2009) (holding that the Court must read the indictment "as a whole and give it a 'common sense construction'"). The Indictment provides detailed background information regarding Defendant's role, the conditions imposed on his use of the City's credit card, the City's financial disclosure statements and travel disclosure requirements. [Doc. 1 at 11–12 ¶¶15–18]; see also [id. at 1–4 ¶¶2–10]. It then spends a full six pages explaining how Defendant's alleged fraudulent scheme

17

worked and providing numerous specific examples, with exact dates and amounts spent, of Defendant's alleged actions in furtherance of the scheme.  [Id. at 4–10 ¶¶12–14].   As discussed above, Paragraphs 13(e) through (h) correspond to the exact timeframe of Counts 4 and 5 and clearly explain what Defendant allegedly took, when he allegedly did it, and how.  [Doc. 1 at 8–9 ¶13(e)–(h)]; see also [id. at 11–12 ¶¶15–18].   Even though Defendant argues those paragraphs should be struck from the Indictment, he simultaneously argues they do not provide enough detail.

The real purpose of Defendant's motion is made clear in his reply brief.  Without citing any authority, Defendant argues that the detailed information discussed above is not enough.  [Doc. 60 at 2–3].  Defendant asserts that he "is entitled to know each and every transaction that the government claims violated federal law, not simply just a few examples of such." [Id.].  But as a panel of the Eleventh Circuit made clear, defendants are not entitled to "a bill of particulars detailing every single material misrepresentation the government intend[s] to show at trial." United States v. Holzendorf, 576 F. App'x 932, 935 (11th Cir. 2014).  Nor is a bill of particulars to be used "to provide defendants with all overt acts that might be proven at trial." United States v. Rosenthal, 793 F.2d 1214, 1227 (11th Cir.), *modified on other grounds*, 801 F.2d 378 (11th Cir. 1986).

18

An indictment is not deficient simply because it "might have been drafted with more clarity," the Court is concerned with "whether it conforms to minimal constitutional standards." United States v. McGarity, 669 F.3d 1218, 1235–36 (11th Cir. 2012). The Indictment here does. Defendant knows what he is accused of stealing, who he is accused of stealing it from, how he allegedly stole the funds, and the exact timeframe when he allegedly took the funds. Whether every instance is discussed in this Indictment or not, if in the future Defendant is charged by the Government with misappropriating funds from the City of Atlanta between July 30, 2015 and July 29, 2017, he will be able to plead double jeopardy. He is not "entitled to know each and every transaction that the government claims violated federal law" via a bill of particulars. See [Doc. 60 at 2–3].

As the Holzendorf Court noted, such a request is "nothing more than a thinly veiled attempt to have the government make a detailed disclosure of the evidence that it plan[s] to present at trial." 576 F. App'x at 935–36. Here, like in Holzendorf, the "indictment describe[s] the nature of the fraudulent scheme" and Defendant knows "several specific examples" of fraudulent transactions he allegedly made. See id. at 936. Additionally, as the Government correctly notes, Defendant's argument is

substantially undercut by the "extensive discovery materials" in his possession. [Doc. 51 at 12].

Defendant contends that he does not want to review the discovery to "determine which of the many transactions . . . were improper" and instead wants a detailed list of "each and every transaction that the government claims violated federal law." [Doc. 60 at 2–3]. Defendant cites no authority in support of his positions, and his argument falls short on both counts. See [id.]. As discussed above, a bill of particulars is not to be used to detail all the "acts that might be proven at trial" that were part of an overall fraudulent scheme. Rosenthal, 793 F.2d at 1227. And a bill of particulars is not appropriate to provide Defendant "information which is already available through other sources" such as discovery. Id.; see also United States v. Martell, 906 F.2d 555, 558 (11th Cir. 1990) (same); Holzendorf, 576 F. App'x at 936 (same). For the foregoing reasons, the undersigned **RECOMMENDS** that Defendant's Motion for a Bill of Particulars ([Doc. 38]) be **DENIED**.

### D.   The Motion to Dismiss

Defendant argues Count 6 should be dismissed because 18 U.S.C. § 922(o) violates the Second Amendment, and he argues Count 8 should be dismissed because "the statute of limitations [for 26 U.S.C. § 7212] is 3 years." [Doc. 46]. Neither

20

argument has ever been accepted by any Court.  As Defendant concedes, binding Eleventh Circuit precedent forecloses the argument that 18 U.S.C. § 922(o) violates the Second Amendment.  [Doc. 61 at 2]; United States v. Wright, 117 F.3d 1265, 1274 (11th Cir. 1997).  But Defendant argues District of Columbia v. Heller, 554 U.S. 570 (2008), abrogated opinions like Wright.  [Doc. 61 at 2]; see also [Doc. 46 at 5–6].

Even after Heller, every court to address the issue has held 18 U.S.C. § 922(o) does not infringe on the Second Amendment.  United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame, 822 F.3d 136, 141–44 (3d Cir. 2016) (the "Third Circuit Case"); Hollis v. Lynch, 827 F.3d 436, 443–51 (5th Cir. 2016); Hamblen v. United States, 591 F.3d 471, 473–74 (6th Cir. 2009); United States v. Fincher, 538 F.3d 868, 872–74 and n. 1 (8th Cir. 2008); United States v. Henry, 688 F.3d 637, 639–40 (9th Cir. 2012).

Although the Eleventh Circuit itself has not directly addressed the issue, it has continued to uphold laws banning weapons "not typically possessed by law-abiding citizens for lawful purposes" even after Heller.  United States v. Tagg, 572 F.3d 1320, 1326 (11th Cir. 2009).  Indeed, Heller itself suggests that fully automatic weapons—"M-16 rifles and the like—may be banned" consistent with the Second Amendment.  554 U.S. at 627.  Defendant argues machineguns are not uncommon because "there

were a total of 741,146 machine guns registered in the United States as of May 2021."
[Doc. 46 at 4–5].  But as the Government notes, that figure includes guns possessed by
"includes state and local agencies (such as police departments), importers, and
manufacturers," as well as weapons owned before § 922(o) took effect.  [Doc. 53 at 6].
Again, every court has rejected any suggestion that machineguns are "in common use
for lawful purposes."  <u>Third Circuit Case</u>, 822 F.3d at 142 (collecting cases).  Put
simply, "the Second Amendment does not protect the possession of machine guns."
<u>Id</u>.

    Defendant's suggestion that the statute of limitations for Count 8 is three years
has also been roundly rejected, although not in any binding precedent.  Defendant
points to an unpublished report and recommendation where a judge noted that a
"parenthetical in 26 U.S.C. § 6531(6) appears to" suggest a three-year statute of
limitation applies to violations like the one alleged in Count 8.  <u>United States v. Kozak</u>,
No. 8:12CR344, 2014 WL 1281916, at *6 (D. Neb. Feb. 7, 2014), *report and
recommendation adopted*, 2014 WL 1281914 (D. Neb. Mar. 27, 2014).  But the judge
in that case did not decide the issue and acknowledged that "Courts in other circuits
have held the six-year limitations period under 26 U.S.C. § 6531(6) applies."  <u>Id</u>.
(collecting cases).  And the district judge who adopted the report and recommendation

22

explicitly held, "The parenthetical language that appears in 26 U.S.C. § 6531(6) does not limit its scope . . . rather the six-year limitation period applies to all actions under Section 7212(a)." Kozak, No. 8:12CR344, 2014 WL 1281914, at *4 (D. Neb. Mar. 27, 2014).

Defendant's analysis—relying on a merely descriptive parenthetical—is unpersuasive. See [Doc. 46 at 6–8].  Instead, the undersigned is persuaded by the analysis of courts like the Sixth Circuit, which held "It would be anomalous for Congress to impose the six[-]year limitations only on the intimidation clause of § 7212(a) and ignore the clause dealing with corrupt methods, where all of the other sections of Title 26 that have a six year statute of limitations also deal with fraud and corruption."  United States v. Kassouf, 144 F.3d 952, 959 (6th Cir. 1998); see also United States v. Workinger, 90 F.3d 1409 (9th Cir.1996) (holding  that "it would be most peculiar if the parenthetical language in § 6531(6) were meant to restrict that section to the intimidation portion of § 7212(a)"); United States v. Swanson, 112 F.3d 512 (4th Cir. 1997) (finding the parenthetical to be merely descriptive and not limiting the six-year limitation period to intimidation clause violations). For the foregoing reasons, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss ([Doc. 46]) be **DENIED**.

23

### E.   The Motion to Sever

Determining whether charges should be severed involves a two-step analysis. United States v. Hersh, 297 F.3d 1233, 1241 (11th Cir. 2002).  First, the Court decides whether the charges are properly joined under Federal Rule of Criminal Procedure 8(a). Joinder is authorized if the offenses charged "are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."  Fed. R. Crim. P. 8(a).  Crimes are "connected" within the meaning of Rule 8(a) "if the proof of one crime constitutes a substantial portion of the proof of the other."   United States v. Montes-Cardenas, 746 F.2d 771, 776 (11th Cir. 1984). The Court "must construe Rule 8 broadly in favor of the initial joinder."  Id.  Second, even if counts are properly joined, the Court must decide if the joinder of the offenses "appears to prejudice a defendant."  Fed. R. Crim. P. 14(a).

Defendant argues Count 6 should be severed because it "is not part of the same transaction or part of a common scheme as the remaining charges" and, even if it is, it "is likely to be perceived by a jury more negatively than wire fraud or violations of tax laws."  [Doc. 47 at 2–3].  The first argument can be rejected out of hand.  Count 7 alleges that Defendant falsely certified the machineguns were "for the exclusive use of [the] Atlanta Police Department," when he knew the machineguns were being

purchased for his own use.  [Doc. 1 at 12–13 ¶22] (alteration in original).  Proving

Defendant took the machineguns "for his own use" is going to be relevant to proving

he "knowingly possessed . . . a machinegun," as alleged in Count 6.  [Id.]; see also [id.

at 12 ¶20].  That is, the offenses are "connected" within the meaning of Rule 8(a)

because proof of Count 7 will "constitute[ ] a substantial portion of the proof" of Count

6.  Montes-Cardenas, 746 F.2d at 776.

Proof regarding Defendant's alleged possession of the machineguns for personal

use is relevant to other counts as well.  Count 3 alleges wire fraud in connection with

an "Email regarding [the] purchase order for two machine guns."  [Doc. 1 at 10 ¶14].

And proof that Defendant took machineguns—worth approximately $2,600—in March

2016 would certainly seem to be part of Count 4, charging defendant with taking City

of Atlanta property worth at least $5,000 during that timeframe.  [Id. at 11 ¶16]; see

also [id. at 7–8 ¶13(d)].  At a bare minimum the offenses are connected because all the

property Defendant allegedly took—including the machineguns—was part of "the

same general fraudulent scheme" of using City of Atlanta funds for Defendant's

personal benefit.  See United States v. Annamalai, 939 F.3d 1216, 1223 (11th Cir.

2019).  Thus, the question is whether the joinder of the offenses "appears to prejudice

a defendant."  Fed. R. Crim. P. 14(a).  In deciding if counts should be severed, the

Court must also bear in mind the baseline "preference . . . to avoid multiple litigation and to conserve judicial resources." United States v. Badia, 827 F.2d 1458, 1466 (11th Cir. 1987).

Defendant argues trying Count 6 with the other charges would be "highly prejudicial" because Count 6 "is likely to be perceived by a jury more negatively." [Doc. 47 at 3].  Defendant's suggestion that a jury will not think the theft of government funds is a serious offense is dubious at best.  His argument that possession of a firearm "connote[s] a level of violence" is closer, but still unpersuasive.  [Id.].  If Defendant were right, a firearm offense could never be tried with other non-violent offense because "gun charges connote a level of violence."  [Id.].  But courts in this Circuit routinely allow such charges to be tried together, and the Eleventh Circuit routinely affirms.  United States v. Jiminez, 983 F.2d 1020 (11th Cir.1993) (affirming the district court's refusal to sever a felon-in-possession firearm charge from a cocaine possession charge); United States v. Watson, 866 F.2d 381, 385 (11th Cir. 1989) (holding that "the district court's failure to sever [marijuana possession] counts from [machinegun possession] counts was not reversible error"); Montes-Cardenas, 746 F.2d at 777 (holding the defendant failed to show prejudice where the district court refused to sever cocaine possession counts from a count alleging possession of unregistered silencers);

26

United States v. Brooks, 426 F. App'x 878, 883 (11th Cir. 2011) (finding no "compelling prejudice" where the district court refused to sever a "drug count" from a "felon-in-possession charge").

The above-cited cases all involve non-violent drug counts being charged together with gun possession counts. In those cases there is a risk that the jury will consider proof regarding the drugs to be proof of the firearm offense, and vice versa. That risk is not present here, as Defendant never suggests possession of a machinegun is commonly associated with "wire fraud or violations of tax laws." See [Doc. 47]; [Doc. 62].

Additionally, as discussed above, evidence regarding Defendant's alleged possession of the machineguns is clearly and directly relevant to other counts in the Indictment. See [Doc. 1 at 7–8, 10, 12–13 ¶¶13(d), 14, 22]. "Unfair prejudice does not result when two offenses are joined if evidence admissible to prove each offense is also admissible to prove the other offense." United States v. Gabay, 923 F.2d 1536, 1540 (11th Cir. 1991). Defendant never addresses the Government's compelling argument that "the overlap in evidence between [the counts] means that the jury will hear proof of the Defendant's intent to purchase and possess the machine guns for non-

official purposes no matter if Count 6 is severed." [Doc. 54 at 11]; see also [Docs. 47, 62].

Last, any risk of unfair prejudice can easily be eliminated by instructing the jury regarding its duty to "make an individualized determination as to . . . defendant's culpability" on each count.  See Badia, 827 F.2d at 1466.  Defendant's conclusory assertion that a "cautionary instruction is insufficient" is not enough.  [Doc. 62 at 4]. The Court "presume[s] that the jury [will] follow[ ] its instructions." United States v. Stone, 9 F.3d 934, 940 (11th Cir. 1993).  To overcome that presumption, Defendant needs to demonstrate that "the average juror could not follow [a] limiting instruction." See Annamalai, 939 F.3d at 1223 (quotation marks omitted).  His conclusory assertion is not sufficient to make such a showing.   See Badia, 827 F.2d at 1466 ("Absent evidence to the contrary, we presume that the jury was able to follow the court's instructions and evaluate the evidence against each defendant independently.").  The crimes charged in the Indictment are distinct—even though the proof of each is interrelated by the facts of this case—and the Court presumes that the jury will follow its instructions.  See Stone, 9 F.3d at 940.  For the foregoing reasons, the undersigned **RECOMMENDS** that Defendant's Motion to Sever ([Doc. 47]) be **DENIED**.

## **CONCLUSION**

For the foregoing reasons, the undersigned **RECOMMENDS** that Defendant's Motions ([Docs. 38, 45, 46, 47, 48]) be **DENIED**.  There are no other pending matters before the Magistrate Judge, and the undersigned is aware of no problems relating to the scheduling of this case.  **IT IS FURTHER ORDERED** and **ADJUDGED** that this action be and the same is hereby, declared Ready for Trial.

**SO ORDERED, REPORTED, AND RECOMMENDED**, this   3   day of June, 2022.

LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

29